UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGELA INEZ HARTMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 4:17-CV-002413-SPM |
| ) | |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Angela Inez Hartmann ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find substantial evidence to support the decision denying benefits, I will affirm the Commissioner's denial of Plaintiff's application.

## I. BACKGROUND

On June 5, 2014, Plaintiff applied for DIB and SSI, alleging that she has been unable to work since February 8, 2010. (Tr. 14). Her application was initially denied on July 25, 2014. *Id*. Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). *Id*. At the hearing, Plaintiff amended her alleged onset of disability date to July 30, 2013. *Id*. On August 3, 2016,

following a hearing, the ALJ found Plaintiff was not under a "disability" as defined in the Act. *Id*. Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 9). On July 26, 2017, the Appeals Council declined to review the case. (Tr. 1). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

**II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT**

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the

claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 30, 2013; that Plaintiff has the severe impairments of Crohn's disease with a history of resection of the terminal ileum, hernia with a history of surgical repair; migraine, obesity; psoriatic arthritis; depression; and adjustment disorder; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404[1], Subpart P, Appendix 1. (Tr. 14-15). The ALJ found that Plaintiff has the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that she can lift, carry, push, or pull only ten pounds occasionally and less than ten pounds frequently; can sit for six hours in an eight-hour workday; can stand or walk for two hours in an eight-hour workday; should never climb ropes, ladders, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; should have no exposure to unprotected heights or hazardous machinery; is limited to simple, routine, and repetitive tasks in a low stress work

---

[1] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the Court will use the regulations in effect at the time that this claim was filed.

4

setting defined as entailing only minimal changes in job setting and duties and only occasional judgment required to perform simple tasks. (Tr. 19). The ALJ found that Plaintiff is unable to perform any of her past relevant work.[2] (Tr. 26). However, relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform occupations including assembler (Dictionary of Occupational Titles ("DOT") No. 734.687-018, 111,500 jobs in the national economy and 2,650 regionally), production worker (DOT No. 706.684-030, 45,600 jobs in the national economy and 950 regionally); and product inspector (DOT No. 669.687-014, 39,840 jobs in the national economy and 830 regionally). (Tr. 27-28). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from July 30, 2013, through the date of her decision. (Tr. 28).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ failed to provide "good" and "sufficient" reasons for declining to assign controlling weight to the opinion of her treating physician, Dr. Gayla Jackson ("Dr. Jackson"); and (2) that there is not sufficient substantial evidence remaining in the record to support the RFC after the ALJ discounted Dr. Jackson's opinion. (Doc. 12 at 3-4 and 7). The Commissioner argues that the ALJ properly gave little weight to the medical opinion of Dr. Jackson because it was inconsistent with the evidence of record, including medical evidence and Plaintiff's activities of daily living. The Commissioner also asserts that there was substantial evidence in the record to support the RFC.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C.

---

[2] Plaintiff's past relevant work included work as a shift manager, cashier, security guard, deli slicer, and restock/retail clerk in food.

§§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The Opinion of Dr. Gayla Jackson

Plaintiff argues that the ALJ reached a flawed RFC assessment because the ALJ failed to give "good" and "specific" reasons for not fully crediting the medical opinion of her treating physician, and thus, the RFC is not supported by substantial evidence and is contrary to law. (Doc. 12 at 2). A claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his

limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, the ALJ conducted a review of Plaintiff's testimony and medical records, conducted an analysis of the consistency of her subjective complaints with the evidence of record, analyzed the medical opinions, and made the following findings regarding Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift, carry, push, or pull ten pounds occasionally and less than ten pounds frequently. She could sit for six hours in an eight-hour workday. She should never climb ropes, ladders, or scaffolds. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should have no exposure to unprotected heights or hazardous machinery. She would be limited to simple, routine, and repetitive tasks, in a low stress work setting, which the undersigned defines as only minimal changes in job setting and duties, and only occasional judgment required to perform simple tasks.

(Tr. 19).

Plaintiff argues that remand is required because the ALJ erred in discounting the opinion of Dr. Jackson when determining her RFC. (Doc. 12 at 3-4). Plaintiff alleges that under 20 C.F.R. § 404.1527(c),[3] the ALJ should have accorded "controlling weight," to the opinion of her treating physician and that after choosing to assign less weight, she should have, but failed to, offer "good" and "specific" reasons for the weight given. "Generally, [a] treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). However, "[a] treating physician's opinion does not automatically control, since the record must be evaluated as

---

[3] These regulations apply to claims filed before March 27, 2017, including the claim at issue in this case. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c.

7

a whole." *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Skelton v. Colvin*, No. 1:14-CV-143-RLW, 2016 WL 320129, at *8 (E.D. Mo. Jan. 26, 2016) (quoting *Goff*, 421 F.3d at 790 (internal quotation omitted); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). A physicians' opinion that a claimant is incapable of gainful employment is often not entitled to significant weight. *Bradley v. Astrue*, 528 F.3d 1113, 1116 (8th Cir. 2008).

After a thorough review of the record, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for partially discounting the opinion of Dr. Jackson. The ALJ was clear in that she gave little weight to Dr. Jackson's opinion because it conflicted with the contemporaneous medical records, as well as other evidence in the record as a whole. (Tr. 26). *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). A medical source opinion that is inconsistent with the objective medical evidence cannot be afforded controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (to be afforded controlling weight, a medical opinion must be consistent with the record as a whole, and must be supported by the objective medical evidence).

Dr. Jackson, in her opinion dated March 11, 2016, stated that she diagnosed Plaintiff with Crohn's disease, psoriasis, psoriatic arthritis, moderate to severe abdominal and hand pain, and frequent, severe headaches. (Tr. 930). Dr. Jackson opined that Plaintiff could occasionally lift and carry up to ten pounds, but never more than that; could never crouch, crawl, climb, stoop, balance, or twist; could occasionally reach, finger or feel, but never handle; could stand or walk

for less than two hours and sit for four hours in an eight-hour work day; required the option to transition from sitting or standing at will; and that her symptoms of diarrhea, pain, paresthesia, or numbness would cause her to require a fifteen minute break once per hour, and would render her capable of only a low stress job. (Tr. 931-32). However, the ALJ noted several instances where Dr. Jackson's opinion was inconsistent with her own treatment notes, and after reviewing the record, the Court agrees that Plaintiff's progress notes from Dr. Jackson do not support her opinion.

Dr. Jackson was Plaintiff's treating physician from February 2015 until February 2016, and Plaintiff attended seventeen doctor's appointments with her during that time period. (Tr. 936, 947, 958, 970, 979, 992, 1015, 1031, 1040, 1054, 1068, 1084, 1093, 1102, 1112, 1127, 1143). Eight of those visits, however, were not precipitated by Plaintiff's allegedly disabling conditions, but rather were for symptoms related to allergies, respiratory infections, rashes, and similar medical conditions. (Tr. 970, 992, 1015, 1031, 1068, 1084, 1102, 1143). As noted by the ALJ, the progress notes from January 21, 2016, showed that Dr. Jackson's review of systems for Plaintiff was negative for headaches, nausea, abdominal pain, myalgia, and joint pain or swelling, and her physical examination showed that Plaintiff had normal range of motion in the musculoskeletal portion of the examination and her bowel sounds were normal. (Tr. 25, 1112). The results from that examination are representative of the treatment notes from the majority of Plaintiff's visits with Dr. Jackson. During the year that Plaintiff was treated by Dr. Jackson, her treatment notes indicate that she was negative for both abdominal pain and tenderness and joint pain or swelling during seven doctor's appointments, (Tr. 947, 964, 1015, 1040, 1054, 1073, 1120). Further, although she did report some abdominal pain, she reported no joint pain or tenderness on two other occasions. (Tr. 986, 1136). Additionally, Dr. Jackson's treatment notes

9

from the relevant time period indicated that Plaintiff reported having a headache on only two occasions, and on each of those occasions the headache coincided with upper respiratory tract symptoms, including sinusitis, sore throat, and an ear infection. (Tr. 947, 1076).

The Court also agrees with the ALJ's determination that Dr. Jackson's statements are inconsistent with the other evidence of record as well, which contains extensive treatment notes from multiple health care providers. (Tr. 26, Exs. 11E, 2F, 4F, 6F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 16F, 17F, 19F, 21F, 22F). For example, Plaintiff's treatment records indicate that throughout the relevant period, Plaintiff frequently reported experiencing no abdominal or migraine related pain and no diarrhea, and physical examinations regularly indicated no abdominal tenderness, distention, or abnormal bowel sounds. (Tr. 415, 508, 627, 642, 744, 1172, 1303, 1539, 1546, 1552, 1595, 1609, 1658). Multiple treatment notes during the relevant period indicate that Plaintiff reported experiencing constipation rather than diarrhea. (Tr. 566, 1303, 1546). Even on the occasions when her symptoms were more severe, the treatment records are inconsistent with Plaintiff's assertion that she needs to use the bathroom approximately sixteen times per day. (Tr. 47-49). For example, on March 28, 2015, Plaintiff went to the hospital for symptoms of a possible Crohn's flare, and reported that she had experienced only four episodes of diarrhea over the last two days. (Tr. 1396). On that same visit, the treatment notes indicated that she was experiencing no abdominal tenderness, and that she had "mild systemic disease with no functional limitations." (Tr. 1405). Also, as noted by the ALJ, Plaintiff underwent an ileocolonic resection in June 2015, after which her progress notes indicated that following surgery, "there was no active disease [remaining] at the margins," and that she was feeling very well with no abdominal pain, diarrhea, or bleeding," and her doctor indicated that he expected her to "do very well over the next couple of years." (Tr. 1573, 1581). The Court agrees that the

foregoing is inconsistent with the extreme limitations placed on Plaintiff in Dr. Jackson's opinion.

The Court also agrees that Dr. Jackson's opinion regarding Plaintiff's limitations were contradicted by Plaintiff's own statements regarding her activities of daily living, as well as the ALJ's observations of Plaintiff at her disability hearing. (Tr. 20, 22). *See Whitman*, 762 F.3d at 706 (ALJ reasonably stated he discounted physician's opinion because the opinion was "more restrictive than self-reported activities"); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (fact that claimant "continues to engage in many normal daily living activities including driving, shopping, [and] visiting with friends and relatives . . . supports finding of ability to work); *see also Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (it is "completely proper" for an ALJ to consider her own observations of a claimant during a hearing). In her Function Report, Plaintiff indicated that she drives, shops for groceries, takes care of daily household chores including light cleaning, laundry, and cooking, frequently plays video games, and that she alone cares for her seven pet ferrets. (Tr. 228-36). Furthermore, at Plaintiff's hearing before the ALJ, when she was asked to describe her activities on a typical day, Plaintiff testified that she could no longer perform the hand motions necessary to stir pancake batter in the mornings, so her roommate would have to do that for her. (Tr. 49-50). However, as noted by the ALJ, while Plaintiff was testifying that she was incapable of moving her hands in the necessary manner to stir batter, she was actually performing those hand motions while she spoke, as if she were stirring imaginary batter. (Tr. 50). Additionally, in her Function Report Plaintiff indicated that she has no difficulty using her hands. (Tr. 232).

Plaintiff also reported that she belongs to various social groups, and often meets with people to play cards, converse, and interact with her friends. (Tr. 231). The ALJ found it

particularly notable that Plaintiff reported that she was able to drive long distances in order to meet various people for social events and dates. (Tr. 23). For example, on multiple occasions during the summer and fall of 2014, Plaintiff drove between her home in the Saint Louis area and the Joplin, Missouri, area, where her boyfriend resided. (Tr. 908, 909, 911). Additionally, in August 2015, Plaintiff drove to Arkansas to visit a friend for a "girl's night out." (Tr. 917). On another occasion, in January 2014, Plaintiff reported that she felt "cooped up" and went on a five-mile hike. (Tr. 618). The Court agrees that such lengthy drives and walks are not consistent with Plaintiff's purportedly disabling pain and her reported need to visit the bathroom multiple times per day for approximately 20 minutes per visit. (Tr. 47-49).

In summation, after careful review of the record, the Court finds that the ALJ adequately articulated the inconsistencies upon which she relied when discounting Dr. Jackson's opinion, and there was substantial evidence in the record to support the ALJ's decision.

**C. Substantial Evidence Supports the RFC**

Plaintiff also argues that the ALJ did not support the RFC with sufficient evidence. Although the record contains medical evidence generally, Plaintiff argues the record was insufficient to assess her RFC, because the ALJ discounted the opinion from her treating physician, and therefore the record did not contain an opinion from a medical source regarding her functional limitations. (Doc. 12 at 7). Consequently, Plaintiff argues, the RFC is not supported by substantial evidence. The Court disagrees.

This argument is based on the faulty premise that an ALJ must have a medical opinion to assess the claimant's RFC, and that absent a medical opinion any RFC determination is invalid. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*,

495 F.3d 614, 619 (8th Cir. 2007). However, there is no requirement that an RFC finding be supported by a specific medical opinion. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *see also Mayfield v. Astrue*, No. 11-3412-CV-S-REL-SSA, 2012 WL 5904331, at *19 (W.D.Mo. Nov. 26, 2012) ("In assessing plaintiff's residual functional capacity, the ALJ was not required to rely entirely on any particular physician's opinion."). Additionally, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20. Furthermore, when evaluating the RFC an ALJ "is not limited to considering medical evidence exclusively," but may also consider a claimant's daily activities, subjective allegations, and any other evidence of record. *Id.*

Here, as an initial matter, the ALJ did not altogether reject Dr. Jackson's opinion. She merely assigned "limited weight" to it. (Tr. 26). *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (considering a physician's opinion and deciding to give it limited weight is not equivalent to rejecting the opinion). Thus, it remained an opinion of record as to Plaintiff's physical functional limitations, and the ALJ properly considered it and discounted the weight accorded to it because she found it inconsistent with the evidence of record. Furthermore, there was another opinion of record regarding Plaintiff's physical functional limitations, which was also considered by the ALJ. A state agency medical consultant, Dr. Elissa Lewis ("Dr. Lewis"), concluded that Plaintiff had an RFC capacity for a reduced range of light work. (Tr. 70). The ALJ considered the opinion and indicated that she weighed it in accordance with 20 C.F.R. §§ 404.1527(f) and 416.927, as a statement from a non-examining physician with expertise in Social Security disability evaluations. (Tr. 24). *See* 20 C.F.R. §§ 404.1527(f) and 416.927; *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (state agency medical consultants are considered to be highly

qualified experts in Social Security disability assessment, and the ALJ must consider their findings). However, after considering the entire record, the ALJ found Plaintiff to have greater limitations than opined by Dr. Lewis, and assigned a more restrictive RFC that properly acknowledged Plaintiff's symptoms as established by the medical record.

Other than the medical opinions discussed above, there was additional substantial evidence of record on which the ALJ relied when determining Plaintiff's RFC, including her medical history, examination findings, response to treatment, daily activities, and other evidence. (Tr. 50, Exs. 5F, 6F, 9F, 10F, 11F, 13F, 17F, 18F, 19F, 21F, 22F, 24F, 25F, 26F). For example, the record as a whole contained extensive treatment records, which provided more than adequate objective medical evidence of Plaintiff's ability to function in the workplace. (Exs. 11E, 2F, 4F, 6F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 16F, 17F, 19F, 21F, 22F). "[M]edical records prepared by the most relevant treating physicians provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011). The evidence in the record was sufficient to assess Plaintiff's RFC, and there is no indication that the ALJ felt unable to make the assessment that she did. The undersigned finds that the ALJ's conclusion is supported by substantial evidence, including Plaintiff's actual daily activities and extensive medical evidence of record, and there was no error in failing to further expand the record. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (The ALJ is required to expand the record only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled); *see also Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

## V. Conclusion

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2018.